IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION
Civil Action No.: 1:22-CV-00544

| | |
|---|---|
| TINA QUARLES, CLAUDIA SAMPEDRO, EVA PEPAJ, JENNIFER WALCOTT ARCHULETA, JESSICA BURCIAGA, INA SCHNITZER a/k/a JORDAN CARVER, KIMBERLY COZZENS a/k/a KIM COZZENS, MONICA LEIGH BURKHARDT, ROSA ACOSTA, BRENDA GEIGER, and URSULA MAYES, ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) | **COMPLAINT** |
| ) | **JURY TRIAL DEMANDED** |
| v. ) ) | |
| LATIN AMERICAN MUSIC PROMOTION LLC d/b/a DISCO RODEO and CARLOS GARCIA, ) ) ) ) | |
| Defendants. ) ) | |

Plaintiffs Tina Quarles, Claudia Sampedro, Eva Pepaj, Jennifer Walcott Archuleta, Jessica Burciaga, Ina Schnitzer a/k/a Jordan Carver, Kimberly Cozzens a/k/a Kim Cozzens, Monica Leigh Burkhardt, Rosa Acosta, Brenda Geiger, and Ursula Mayes (collectively, "Plaintiffs"), file this Complaint against Latin American Music Promotion, LLC d/b/a Disco Rodeo and Carlos Garcia, (collectively "Defendants"), and respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of Images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Disco Rodeo located in Winston-Salem, North Carolina ("Disco Rodeo" or the "Club").

2.     As detailed below, Defendants' misappropriation and unauthorized use of

- 1 -

Plaintiffs' Images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiffs' common law right of privacy - misappropriation; d) violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat § 75-1.1 *et seq.*; and c) various common law torts, including conversion.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## **JURISDICTION & VENUE**

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, defendant Latin American Music Promotion, LLC operating under the laws of the state of North Carolina, operates Disco Rodeo, which is located at 3081 Waughtown Street, Winston-Salem, North Carolina 27107.

8.      According to publicly available records, defendant Carlos Garcia is an individual operating under the laws of the state of North Carolina, operates is a Managing Member of Latin American Music Promotion LLC.

9.      Venue is proper in the United States District Court for the Middle District of North

- 2 -

Carolina because Defendants' principal place of business in Winston-Salem, North Carolina.

10.     A significant portion of the alleged causes of action arose and accrued in Winston-Salem, North Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Winston-Salem, North Carolina.

**PARTIES**

*Plaintiffs*

11.     Plaintiff Tina Quarles ("Quarles") is a well-known professional model, and a resident of Johnson County, Kansas.

12.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Jennifer Walcott Archuleta ("Archuleta") is a well-known professional model, and a resident of Maricopa County, Arizona.

15.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

16.     Plaintiff Ina Schnitzer a/k/a Jordan Carver ("Carver") is a well-known professional model, and a resident of Miami-Dade County, Florida.

17.     Plaintiff Kimberly Cozzens a/k/a Kim Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

18.     Plaintiff Monica Leigh Burkhardt ("Burkhardt") is a well-known professional model, and a resident of Suffolk County, New York.

19.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident

of Los Angeles County, California.

20.     Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

21.     Plaintiff Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

***Defendants***

22.     Defendant Latin American Music Promotion, LLC is a limited liability corporation formed under the laws of the state of North Carolina and registered to conduct business in North Carolina. At all times relevant to this action, Latin American Music Promotion, LLC operated Disco Rodeo in Winston Salem, North Carolina.

23.     Service of process may be perfected upon Defendant Latin American Music Promotion, LLC by serving the registered agent for service of process, David J. Long, at 3081 Waughtown Street, Winston Salem, North Carolina 27107-1634.

24.     Defendant Carlos Garcia is the Manager of Latin American Music Promotion, LLC who himself, upon information and belief, was the natural person who directed, supervised, participated in, and is responsible for the wrongful acts and omissions complained of herein.

25.     Service of process may be perfected upon Carlos Garcia by serving him at 5903 Waterelm Lane, Charlotte, North Carolina 28269.

## FACTUAL ALLEGATIONS

26.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

27.     Plaintiffs' careers in the modeling industry place a high degree of value on their

- 4 -

good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

28.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

29.    In the case of each Plaintiff, this apparent claim was false.

30.    Moreover, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization.

31.    No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

32.    Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

33.    In other cases, Defendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by Defendants.

***Plaintiffs' Individual Backgrounds and Careers***

34.    Plaintiff Quarles obtained her degree in Business Administration/ Marketing from Pacific University in Forest Grove, Oregon while playing volleyball and track and field.  After college, she worked in the sports industry followed by the financial industry as a broker. She then

went into commercial real estate and medical device sales. Regardless of her day job, she was always involved with fitness. While in the financial industry she obtained her Personal Training Certificate and trained groups and individual in her free time. She began taking acting courses at the Portland Actors Conservatory where she her passion for acting finally coming out. In 2006 she decided to pursue acting and fitness modeling full time and made the move to Los Angeles. She was able to obtain her SAG card within her first year which was a huge hurdle. She filmed a few commercials, fitness infomercials and done some body doubling as well as print work. She worked with Snoop Dogg, on Coors Light Commercials and numerous body doubling roles on CSI: New York. She's landed some runway jobs as well as promotional modeling. She is currently a trainer and the director of social media for one of the top physical therapy clinics in as of Kansas and Missouri.

36. That we know of, Quarles is depicted in the photos in Exhibit "A" to promote Disco Rodeo on its Facebook page. This Image was intentionally altered to make it appear that Quarles was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

36. Quarles has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37. Plaintiff Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model

Case 1:22-cv-00544-CCE-LPA   Document 1   Filed 07/14/22   Page 6 of 26

for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Sampedro has three children, and is married to former Green Bay's star defensive end Julius Peppers

38.     That we know of, Sampedro is depicted in the photos in Exhibit "B" to promote Disco Rodeo on its Facebook page. These Images were intentionally altered to make it appear that Sampedro was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

39.     Sampedro has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

40.     Plaintiff Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004.  Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign.

41.     That we know of, Pepaj is depicted in the photos in Exhibit "C" to promote Disco Rodeo on its Facebook page. These Images were intentionally altered to make it appear that Pepaj was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

42.     Pepaj has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue

Case 1:22-cv-00544-CCE-LPA   Document 1   Filed 07/14/22   Page 7 of 26

to suffer, damages as a result of same.

43.     Plaintiff Archuleta is a model, actress, and reality TV star. She became the *Playboy* "Playmate of the Month" in August 2001 and subsequently launched her own website and was chosen by Carmen Electra to model for her celebrity guest photographer photo shoot on www.playboy.com. She also appeared in several music videos, including videos for Justin Timberlake, Stereophonics, and Marc Anthony. During her first pregnancy, Archuleta appeared on the cover of *Holistic Health Magazine* and then posed for the covers of magazines, such as *Moves, American Curves, Muscle & Fitness, Hers, Physical, Iron Man, VP Racing Fuel, Performance Audio and Sound, AtoZ, Planet Muscle, 944, Stun,* and *People* (Australia). In 2005, Archuleta along with Scarlett Keegan and Destiny Davis, were given keys to Las Vegas by the mayor in appreciation for posing for a calendar promoting the city. Later that year, Archuleta appeared in the movie American Pie: Band Camp. In 2008, she also acted in the movie *The Pool Boys* and was featured on many television shows such as *The Weakest Link, Street Smarts, Dog Eat Dog, Wild On!, Russian Roulette, Howard Stern, MTV Cribs, Entertainment Tonight, Best Damn Sports Show Period, Ripley's Believe It or Not, The Other Half,* and was featured on *E! True Hollywood Story* and *Mom Time TV.* Currently, Archuleta is the spokesperson for Ciclon rum and Bally's slot machine. She is also now living in Arizona and is raising her three children with her husband and former NFL safety, Adam Archuleta. She enjoys over 195,393 Facebook, Twitter, and Instagram followers.

44.     That we know of, Archuleta is depicted in the photo in Exhibit "D" to promote Disco Rodeo on its Facebook page. This Image was intentionally altered to make it appear that Archuleta was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

- 8 -

45.     Archuleta has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.     Plaintiff Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's,* "Neighborhood Knockout," contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand Facebook likes, and over 192 thousand followers on Twitter.

47.     That we know of, Burciaga is depicted in the photos in Exhibit "E" to promote Disco Rodeo on its Facebook page. These Images were intentionally altered to make it appear that Burciaga was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

48.     Burciaga has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no

- 9 -

remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

49.     Plaintiff Carver is a German glamour model and actress based in the United States.  Jordan became a commercial spokeswoman for online German consumer electronics giant Redcoon. She set a record by appearing on the cover of Britain's Zoo magazine six times. Jordan won the contest for the racing sport seat production company COBRA and became their spokes model, a position she held until recently. She later won second place on the Top 100 Internet Model Newcomer of the Year list after being nominated by Break Media. She has over 2 million followers on Instagram, over 636 thousand followers on Twitter, and over 18 thousand followers on Facebook.

50.     That we know of, Carver is depicted in the photos in Exhibit "F" to promote Disco Rodeo on its Facebook page. This Image was intentionally altered to make it appear that Carver was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

51.     Carver has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

52.     Plaintiff Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them

- 10 -

being LA Models and LATALENT.

53.     That we know of, Cozzens is depicted in the photos in Exhibit "G" to promote Disco Rodeo on its Facebook page. This Image was intentionally altered to make it appear that Cozzens was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

54.     Cozzens has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

55.     Plaintiff Burkhardt worked as a bartender and dental assistant prior to being encouraged by her childhood friend and fellow Playboy Playmate, Courtney Culkin, to try out. She has modeled for the famous men's magazine in various newsstand special editions (she was featured on the cover of "Playboy's College Girls" in September, 2005). She was the Playboy Cyber Girl of the Week for August 29, 2005 and the Cyber Girl of the Month for December, 2005. Leigh was subsequently named Cyber Girl of the Year for 2006. Moreover, she was the Playmate of the Month in the March, 2006 issue of Playboy and graced the cover of the August, 2006 issue. Leigh has appeared in several Playboy videos and on a handful of episodes of the reality TV series, The Girls Next Door (2005). She has acting roles in the movies, The Duel (2006), The Pool Boys (2009), The Gentleman (2007) and Road Raiders (2000). Monica has popped up as an extra not only in Spider-Man 3 (2007), but also on episodes of both Entourage (2004) and CSI: Miami (2002).

56.     That we know of, Burkhardt is depicted in the photos in Exhibit "H" to promote Disco Rodeo on its Facebook page. These Images were intentionally altered to make it appear that

- 11 -

Burkhardt was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

57.     Burkhardt has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

58.     Plaintiff Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 36 thousand Facebook followers, over 1.6 million Instagram followers, and over 291 thousand Twitter followers.

59.     That we know of, Acosta is depicted in the photos in Exhibit "I" to promote Disco Rodeo on its Facebook page. This Image was intentionally altered to make it appear that Acosta was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

60.     Acosta has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

61.     Plaintiff Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as *Show, Maxim* and *Raw*, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

62.     That we know of, Geiger is depicted in the photos in Exhibit "J" to promote Disco Rodeo on its Facebook page. These Images were intentionally altered to make it appear that Geiger was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

63.     Geiger has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

64.     Plaintiff Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in *Maxim* magazine. She is well known as a "suitcase model #5" from the hit game show *Deal or No Deal*. Mayes has appeared on *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, *Vogue, Elle, In Style, Cosmopolitan,* and *Marie Claire*,

- 13 -

to name a few. Mayes is currently a cover model and a star of the game *Juiced 2: Hot Import Nights*. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

65.     That we know of, Mayes is depicted in the photos in Exhibit "K" to promote Disco Rodeo on its Facebook page. This Image was intentionally altered to make it appear that Mayes was either an employee working at Disco Rodeo, that she endorsed Disco Rodeo, or that she was otherwise associated or affiliated with Disco Rodeo.

66.     Mayes has never been employed at Disco Rodeo, has never been hired to endorse Disco Rodeo, has never been otherwise associated or affiliated with Disco Rodeo, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

67.     Defendants operate Disco Rodeo, where they engage in the business of selling alcohol and food in a sexually charged atmosphere.

68.     In furtherance of its promotion their promotion of Disco Rodeo, Defendants own, operate, and control Disco Rodeo's social media accounts, including its Facebook, Twitter, and Instagram accounts.

69.     Defendants used Disco Rodeo's Facebook, Twitter, and Instagram accounts to promote Disco Rodeo, and to attract patrons.

70.     Defendants did this for their own commercial and financial benefit.

71.     Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential

clientele that each Plaintiff either worked at Disco Rodeo, endorsed Disco Rodeo, or was otherwise associated or affiliated with Disco Rodeo.

72.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Disco Rodeo to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

73.     Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Disco Rodeo, and at no point have any of the Plaintiffs ever endorsed Disco Rodeo, or otherwise been affiliated or associated with Disco Rodeo.

74.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

75.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

76.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

77.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

78.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the

- 15 -

client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

79.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

80.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Disco Rodeo.

81.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

82.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Disco Rodeo.

83.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

84.     No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

85.     No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including Disco Rodeo's website, Twitter, Facebook, or Instagram accounts.

86.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

87.     Defendants' use of Plaintiffs' Images in some cases was also in violation of

copyrights and/or licenses held by others, who had lawful relationships with Plaintiffs based on the standard business practices in the modeling industry.

88. Defendants' breaches of copyrights and/or licenses held by others likewise had the purpose and effect of injuring Plaintiffs in the ways complained of herein, as Plaintiffs were foreseeable victims of harm from Defendants' breaches.

**FIRST CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

89. The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with The Club, nor had they agreed to appear in Disco Rodeo' advertisements.

90. Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

91. Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Disco Rodeo.

92. Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

93. Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Disco Rodeo, Defendants nevertheless used Plaintiffs' Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Disco Rodeo.

94. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Disco Rodeo.

95. Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Disco Rodeo, and the goods and services provided by Disco Rodeo.

- 17 -

96. Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)**

97. Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Disco Rodeo, or worked at, sponsored, or approved of Disco Rodeo goods, services, or commercial activities.

98. This was done to promote and attract clientele to Disco Rodeo, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

99. Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Disco Rodeo, nor worked at, sponsored, or approved of Disco Rodeo' goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Disco Rodeo.

100. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Disco Rodeo.

101. Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Disco Rodeo and the goods and services provided by Disco Rodeo.

102. Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

- 18 -

## THIRD CAUSE OF ACTION
### (Common Law Right of Privacy - Misappropriation)

103.    Defendants have appropriated each Plaintiffs' likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

104.    Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Disco Rodeo' website or related social media accounts as part of Defendants' advertising campaign.

105.    Disco Rodeo' website and social media accounts were designed to advertise and attract business to Disco Rodeo and generate revenue for Defendants.

106.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their Image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

107.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' Image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

108.    Plaintiffs' are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

109.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Disco Rodeo.

110.    At no point did any Defendants ever seek or receive permission or consent to use

- 19 -

any Plaintiffs' Image for any purpose.

111.    Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

112.    At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

113.    Defendants' misappropriation of Plaintiffs' Images in some cases was in violation of copyrights and licenses lawfully held by others, and Defendants' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendants' misappropriation of their Images.

114.    Plaintiffs have been damaged in amounts to be proved at trial.

## FOURTH CAUSE OF ACTION
**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*)**

115.    Defendants' operated Disco Rodeo' website and social media accounts in order to promote Disco Rodeo, to attract clientele thereto, and to thereby generate revenue for Defendant.

116.    As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in North Carolina.

117.    Defendants' published Plaintiffs' Images on Disco Rodeo' website and social media accounts to create the false impression that Plaintiffs were either employees working at Disco Rodeo, endorsed Disco Rodeo, or were otherwise affiliated, associated, or connected with Disco Rodeo.

118.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Disco Rodeo.

- 20 -

119.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

120.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

121.    Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

122.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina and caused injury to the Plaintiffs as complained of herein.

123.    Defendants' advertising practices offend the public policy of North Carolina insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

124.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are employees at Disco Rodeo.

125.    Defendants' advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are employees at, endorse, or are otherwise

affiliated with Disco Rodeo.

126.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

127.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

128.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

129.    Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

130.    Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1

<u>**FIFTH CAUSE OF ACTION**</u>
(**Negligence, Gross Negligence, and** *Respondeat Superior*)

131.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

132.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

133.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and

- 22 -

promotional materials and practices did not infringe on their property and publicity rights.

134. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

135. Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

136. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

137. Defendants' breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

138. Defendants' breaches were the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

139. As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
**(Conversion)**

- 23 -

140.     Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

141.     By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain.

142.     As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>**SEVENTH CAUSE OF ACTION**</u>
**(Unjust Enrichment)**

143.     As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Disco Rodeo to the general public and potential clientele.

144.     Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either employees working at Disco Rodeo or endorsed Disco Rodeo.

145.     Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

146.     Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

147.     Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Disco Rodeo.

148.     Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

149.     As such, Plaintiffs have been damaged in an amount to be determined at trial.

- 24 -

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

150.     Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

151.     Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

152.     Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Disco Rodeo, endorse Disco Rodeo, or are otherwise affiliated with Disco Rodeo, Defendants have not compensated Plaintiffs.

153.     Plaintiffs are therefore entitled to reasonable compensation for Disco Rodeo' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For the Defendants to be adjudged jointly and severally liable to Plaintiffs upon Plaintiffs' first through eighth causes of action;

(b) For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(c) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images for any purpose;

(d) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16;

(e) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117

(f) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 13th day of July 2022.

BY: /s/ John V. Golaszewski
JOHN V. GOLASZEWSKI
N.Y. Bar No. 4121091
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Floor
New York, NY 10019
john@casaslawfirm.com
T: 646.872.3178
F: 855-220-9626
*Attorneys for Plaintiff*

BY: /s/ Matthew R. Gambale
MATTHEW R. GAMBALE
N.C. Bar No. 43359
OSBORN GAMBALE BECKLEY & BUDD PLLC
721 W. Morgan Street
Raleigh, North Carolina 27603
matt@counselcarolina.com
T: 919.373.6422
F: 919.578.3733
*Local Civil Rule 83.1(d) Attorneys for Plaintiff*

- 26 -